RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0416p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————



DENNIS JENSEN,

                         *Petitioner-Appellee,*

     *v.*

KENNETH ROMANOWSKI,
                 *Respondent-Appellant.*

No. 08-1758

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-11605—Bernard A. Friedman, District Judge.

Argued: October 7, 2009

Decided and Filed: December 9, 2009

Before: MARTIN, COLE, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Janet A. Van Cleve, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Todd Shanker, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Todd Shanker, Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. The State of Michigan appeals from the district court's grant of a petition for a writ of habeas corpus. In 1989, Dennis Jensen pled no contest to a charge of fourth degree criminal sexual conduct. As part of his plea bargain, Jensen agreed to waive his right to confront the complainant, a thirteen-year-old girl. In 2001, Jensen was again charged with criminal sexual conduct, this time with an eleven-year-

1

old girl. As part of its case, the prosecution called Lieutenant Ronald Wolter, the officer who interrogated the 1989 complainant, to testify about Jensen's earlier conviction. At trial, Lieutenant Wolter provided detailed hearsay testimony regarding his conversation with the 1989 complainant. The State did not attempt to produce the 1989 complainant or any other witness to the 1989 event for cross-examination. A jury found Jensen guilty of second-degree sexual conduct in the 2001 case and sentenced him to concurrent prison terms of 5 to 20 years for the home invasion conviction and 38 months to 15 years for the criminal sexual conduct conviction.

After an unsuccessful direct appeal, Jensen petitioned the United States District Court for the Eastern District of Michigan for a writ of habeas corpus, alleging that the admission of Lieutenant Wolter's 1989 testimonial evidence violated Jensen's rights under the Confrontation Clause and that the violation was not harmless error. The district court held that admitting Lieutenant Wolter's testimony violated the Confrontation Clause and that the error was not harmless. The court therefore granted Jensen's request for habeas relief. The State now appeals, asking that we reverse the district court's holding of harmless error.[1]

The prosecutor referred to Lieutenant Wolter's testimony multiple times throughout voir dire, his opening statement, the trial and his closing arguments, relying on details provided only in the erroneously admitted evidence to argue that Jensen had a common scheme or design to have sexual encounters with young girls. We therefore find that Lieutenant Wolter's testimony had a "substantial and injurious effect or influence" on the jury's verdict, under the *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) test for harmless error and **AFFIRM** the district court's judgment.

## I.

The facts of this case appear in detail in the district court opinion, *People v. Jensen*, 564 F. Supp. 2d. 740 (E.D. Mich. 2008). At Jensen's 2001 trial, the complainant, A.M. and Jensen offered inconsistent testimony. As witness credibility

---

[1]The state does not seriously contend that the district court erred in finding a violation of the Confrontation Clause. The main argument on appeal is that the constitutional error was harmless.

plays a role in weighing the merits of this case, we summarize the inconsistent testimonies below:

A.M., who was twelve years old at the time of trial, testified that on July 29, 2000, she was home alone. While downstairs in the living room, she saw someone walking out the front door. Afterwards, when she was bathing in the bathroom, she heard a knock that she believed to be her grandfather's knock. She went downstairs, opened the door, and found Jensen there. Jensen, A.M.'s landlord, came into the residence and asked if he could use the restroom. A.M. told Jensen yes. Jensen went to the restroom and then left the apartment, stating that he needed to get something from his car. He returned and asked A.M. if she wanted to dance. When A.M. said no, Jensen pulled her towards him, placing one hand on her shoulder and another on her hips, forcing her to sway back and forth with him. She escaped, but Jensen trapped her. He kissed her face, put his hand on and rubbed the "private part between [A.M.'s] legs," and placed his hand on her breast above her shirt. Jensen then told A.M. that she was cute and told her "It's our little secret," before leaving her house.

In contrast to the testimony above, when Detective Susan Randall interrogated A.M. after the incident, A.M. stated that Jensen was already in the living room when A.M. came out of the bathroom.

Jensen's testimony differed from A.M.'s on several crucial points. He testified at trial that on July 29th he went to the residence where A.M. and her family lived, but that he did not enter their house. He also denied having been alone with A.M. that day and denied touching her inappropriately. Jensen also alleged that, prior to the incident, he had given A.M.'s family at least three warnings of eviction because the family had failed to pay rent. He claimed that, at the time of the alleged incident, he had already completed eviction documents and, on July 27th, had shown these documents to A.M.'s stepfather—an allegation contested by A.M.'s stepfather.

Following the July 29th incident, A.M.'s family suspected that Jensen had entered their apartment when the Jensens were not home. Consequently, Detective Randall prepared an envelope of "tell-tale" purple powder and planted it in A.M.'s

kitchen. Shortly thereafter, the family found the envelope open and purple powder scattered about their kitchen. Detective Randall interviewed Jensen and noticed that Jensen had traces of purple powder beneath his nails. Notably, during the interview, Jensen testified differently than he testified at trial—admitting that he had been alone with A.M. on several occasions and once gave her a hug when she appeared to be upset.

Jensen made several admissions in the current trial regarding his 1989 conviction: that the conviction existed and that he had pled "no contest" to the charge; that he had engaged in the activity for which he had been prosecuted; that in 1989 he confessed to having "deep feelings" for young women and that he had trouble controlling those feelings; and that at the time of the 1989 conviction, he was seeking psychological help to control his feelings. However, it was the testimony of Lieutenant Wolter, who interrogated the 1989 complainant, that provided details of the 1989 conviction that would not otherwise have been known to the jury in the present case. Lieutenant Wolter testified that:

> when he was previously employed as a road trooper at the Newaygo post of the state police, he received a complaint from a female who was thirteen years old or younger alleging that [Jensen] engaged in nonconsensual sexual contact with her involving above-the-clothes fondling of her chest and buttocks area. Lieutenant Wolter testified that the victim in that case was a neighbor of [Jensen], that it was reported there was no other adult present in the apartment at the time of the assault, and that the victim reported that [Jensen] told her that she had "a nice butt."

*People v. Jensen*, No. 235372, slip op. at 2 (Mich. App. Nov. 9, 2004).

The prosecution introduced Lieutenant Wolter's testimony over Jensen's objections under Michigan's residual hearsay exception.[2] The prosecution appears to have made no effort to produce the 1989 victim or any witness to the 1989 event.

On January 19, 2001, the state trial court jury found Jensen guilty of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) (sexual conduct with a person under thirteen years of age). On February 20, the trial court sentenced Jensen to concurrent terms of 60 months to 240 months for the home invasion and 38 months to 180 months for the criminal sexual conduct.

Jensen appealed from his convictions, alleging that the admission of Lieutenant Wolter's testimony regarding what the 1989 complainant had said violated Jensen's rights under the Confrontation Clause. He further contended that the prosecution materially relied upon Lieutenant Wolter's testimony in building its case and that the alleged constitutional error was not harmless because it may have had a substantial or injurious impact or influence on the jury's verdict.

The Michigan Court of Appeals initially reversed Jensen's convictions and remanded his case for a new trial, holding that Lieutenant Wolter's testimonial evidence violated Jensen's rights under the Confrontation Clause and that the error was not harmless. *People v. Jensen,* No. 235372 (Mich. App. Sept. 9, 2003), *vacated*, No. 235372 (Mich. App. Nov. 9, 2004).[3] Subsequently, the prosecutor argued in a motion for rehearing that Jensen's own admissions and other properly admitted evidence of the prior conviction were sufficient to overcome the taint of Wolter's improper testimony.

---

[2]This exception allows the court to admit hearsay evidence if the relevant hearsay testimony is:
> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Mich. R. Evid. 803(24).

[3]The original opinion is no longer available online.

The Michigan Court of Appeals granted the prosecutor's motion and vacated its prior opinion. *Id*. In a subsequent opinion, the Michigan Court of Appeals held that admitting the testimony violated Jensen's Confrontation Clause rights but found that the error was harmless. *People v. Jensen,* No. 235372 (Mich. App. Nov. 9, 2004). Jensen appealed to the Michigan Supreme Court, which denied him leave to appeal. *People v. Jensen*, 693 N.W.2d 823 (Mich. 2005).

Jensen then filed a habeas corpus petition on April 4, 2006, alleging that the Michigan trial court's rulings deprived him of due process, a fair trial, and his right to present a defense. The district court held that the state court did not violate Jensen's due process rights nor his right to present a defense. However, the court found that, because the prosecution had presented testimonial evidence regarding a prior offense without attempting to produce either the victim of the prior offense or any witness to that offense, the 1989 testimonial evidence violated Jensen's right to confront and examine the witness against him. The court further held that, under the "substantial and injurious effect" test described in *Brecht*, 507 U.S. at 637, the error was not harmless and granted Jensen habeas relief. The State timely appealed.

## II.

We review the district court's grant of a writ of habeas corpus *de novo*. *Miller v. Webb*, 385 F.3d 666, 671 (6th Cir. 2004). Factual determinations are generally reviewed for clear error, "except where the district court has made factual determinations based on its review of trial transcripts and other court records." *Mackey v. Russell*, 148 Fed. Appx. 355, 359 (6th Cir. 2005). In such cases, because no credibility determination or finding of fact are required, factual conclusions are reviewed *de novo*. *Wolfe v. Brigano,* 232 F.3d 499, 501 (6th Cir. 2000). We review legal conclusions *de novo*. *Greer v. Mitchell*, 264 F.3d 663, 671 (6th Cir. 2001).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court can grant a writ of habeas corpus only if a petitioner can show that the state's adjudication of his claims on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Boykin v. Webb,* 541 F.3d. 638, 642 (6th Cir. 2008) (*quoting Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). Under the "unreasonable applications" clause, a habeas court may grant the writ if the state court identified the correct legal principle from the Supreme Court's decisions but unreasonably applied that principle to the petitioner's case. *Id.*

For purposes of habeas corpus review, a court must assess the prejudicial impact of constitutional errors not deemed to be "structural defects" in a state-court trial under the "substantial and injurious effect" standard set forth in *Brecht*, 507 U.S. at 637; *see also Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).[4] When applying the *Brecht* standard, the Supreme Court held that, rather than placing the burden of proof on the petitioner, the sitting judge must ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). If the judge is certain that the error had no or a small effect, the verdict must stand. *Id.* However, if the matter is so evenly balanced that the judge has "grave doubts" as to whether the trial error had substantial or injurious effect or influence in determining the jury's verdict, such that the matter is so evenly balanced that he feels himself in a "virtual equipoise" as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ. *O'Neal*, 513 U.S. at 435 & 445; *Stallings v. Bobby*, 464 F.3d. 576, 582 (6th Cir. 2006).

---

[4]The Supreme Court noted in *Brecht* that certain errors implicating fundamental constitutional processes may require the reversal of a conviction without turning to harmless error analysis. *Brecht,* 507 U.S. at 638 n.9; *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); *United States v. Gonazalez-Lopez*, 548 U.S.140, 148-49 (2006). The Court divided constitutional errors into two categories: (1) "trial errors", taking place during presentation of the case to the jury and whose effect may be "quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt."; and (2) "structural defects" which "defy analysis by harmless-error."

In determining whether a Confrontation Clause violation is harmless under *Brecht,* this Court has repeatedly referred to the factors laid out in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).   Those factors include:  (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case.  *Id.*

### III.

#### A.     The Confrontation Clause

The Confrontation Clause of the Sixth Amendment generally provides a criminal defendant with the right to physically face and cross-examine witnesses testifying against him.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

#### B.     *Van Arsdall* Factors for Determining "Harmless Error" under *Brecht*

For the purposes of habeas corpus review, we assess the prejudicial impact of constitutional trial errors under the "substantial and injurious effect" standard set forth in *Brecht,* examining the error by applying the *Van Arsdall* factors to the facts in the case.  If the constitutional error had no material effect, the verdict must stand.  However, if the court has "grave doubts" whether the error had a substantial or injurious effect or influence in determining the jury's verdict, we must treat the error as if it were harmful and grant the petitioner's writ.  *O'Neal* 513 U.S. at 432, 435-36; *Stallings*, 464 F.3d at 582.[5]

---

[5]*O'Neal* describes "grave doubt" to mean that in the judge's mind, "the matter is so evenly balanced that he feels himself in a virtual equipoise as to the harmlessness of the error." Although both the State and Jensen have attempted to assign mathematically determinative perimeters to the term "equipoise," none of our cases treat the equipoise as a mathematical principle and we decline to do so now. *O'Neal* explains, however, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgement was not substantially swayed by the error, it is impossible to conclude that the substantial rights were not affected."

###### 1.     The Importance of the Witness's Testimony in the Prosecution's Case[6]

First, Lieutenant Wolter's testimony was important to the prosecution's case. The prosecution stressed similarities between Jensen's past sexual offense and the current case, relying heavily upon Lieutenant Wolter's detailed description of the earlier event to show the alleged similarities. The prosecution drew detailed parallels between the two offenses throughout voir dire, opening statement, trial and closing argument, hypothesizing that the consistency in Jensen's behavior when perpetuating the two offenses suggested that he had a deliberate method or scheme of having sexual contact with young girls. The jury received an instruction that they might consider the two alleged events together as indicative of a deliberate scheme, an instruction tending to bolster A.M.'s credibility and undermine Jensen's testimony.

Although Jensen admitted at trial that he been convicted of a prior offense, he provided no details; the details used by the prosecution to draw parallels between the two offenses came solely from Lieutenant's Wolter's erroneously admitted evidence. The prosecution urged the jury to consider that both girls were young girls known to Jensen. Both were near the same age. Both were alone when approached by Jensen. He touched both of them on the breast through their clothing. He touched one on her butt, the other between her legs. He complimented them both on their looks. Without those details, the prosecution could not have drawn meaningful comparisons between Jensen's past offense and the current case. Because the details of Lieutenant Wolter's testimony were a significant part of the prosecutor's case, the testimony likely substantially impacted the jury's verdict.

---

[6]Although the State now contends that Lieutenant Wolter's testimony is not a significant part of their case, it is worth noting that the State initially brought Lieutenant Wolter's testimony into evidence under the residual hearsay exception. An essential component for admission under the residual hearsay exception is that the statement is the "most probative evidence available" on the contested issue. MRE 804(B)(7), 803(24).

### 2.      Cumulative Evidence

Wolter's testimony was not cumulative.  Although other evidence of the 1989 conviction was raised at trial, Lieutenant Wolter's testimony provided the only details of the 1989 complainant's testimony.  Lieutenant Wolter's testimony revealed new facts regarding how Jensen knew the 1989 complainant, how and where he touched her, and what he said to her.  Not only were these details not cumulative, but jurors could have easily found that these details bolstered the current case by establishing a pattern of behavior indicative of Jensen's scheme to molest young girls.  This potential bolstering "weighs against finding harmless error."  *Vasquez*, F.3d at 576 (*citing Arizona v. Fuliminante*, 499 U.S. 279, 299 (1991)).

### 3.      Corroborating or Conflicting Evidence

 When Detective Randall, who prepared the envelope of purple tell-tale powder interrogated Jensen shortly after he opened the "rigged" envelope, Jensen admitted that he had engaged in the conduct for which he was convicted in 1989.  He also testified that he pled guilty (though he actually pled no-contest) and that he was guilty of the offense.  Though no physical evidence connects Jensen to the 1989 conviction,  Jensen's own testimony corroborated Lieutenant Wolter's testimony.   However, no evidence corroborated the details of the prior conviction; those details came solely from Lieutenant Wolter's testimonial evidence.  Thus, though Jensen corroborated the existence of the 1989 conviction, none of the details used by the prosecution in building its case for Jensen's scheme to have physical interactions with young girls were corroborated.

### 4.      Extent of Cross-Examination Otherwise Permitted

The district court, after examining transcripts from arraignment, pretrial conference, a no-contest plea, and sentencing for the 1989 offense, found that none of these proceedings included an opportunity to cross-examine the 1989 complainant.

###     5.     Strength of Prosecution's Case

Without Lieutenant Wolter's testimony, the prosecution's case was substantial but not overwhelming. Jensen testified before the jury that he had been convicted of fourth-degree criminal sexual conduct and that he had done many other things of which the police were not aware. He admitted to Lieutenant Wolter at the time of the 1989 conviction that he had deep sexual feelings for young girls and had trouble controlling his behavior, that he was undergoing psychological treatment, and that he had an alcohol and drug problem. As the district court points out, however, these admissions were indicative of character traits in the past, not of guilt in the present case.

Little physical evidence linked Jensen to A.M. Although it seems clear that Jensen had been in A.M.'s house on at least one occasion and opened an envelope of purple powder, no physical evidence linked Jensen to A.M. on the day of the alleged incident. Because no witnesses but Jensen and A.M. were present, the case was essentially a credibility contest between Jensen and A.M. Both Jensen and A.M. made statements to investigators that they either revised at trial or were shown to be false at trial.

Although Jensen's own admissions and past criminal conduct conviction were certainly damaging, they do not necessarily provide a compelling case for the prosecution. The jury might have believed that A.M.'s family was retaliating against him because Jensen had served them with eviction papers shortly before the alleged incident. Without Lieutenant Wolter's testimony, the jury may have found A.M.'s testimony less credible. Though it is impossible to speculate how the trial may have played out under different circumstances, it is clear that the prosecution's case was materially weaker without Lieutenant Wolter's testimony.

### IV.

The *Van Arsdall* factors support a finding that Lieutenant Wolter's testimony had an injurious or substantial impact on the jury's verdict. Details provided solely in the 1989 complainant's testimony, offered via Lieutenant Wolter, bolstered the

prosecution's case against Jensen. Throughout the trial, the prosecution stressed similarities between Jensen's alleged conduct in 1989 and in the present case, relying heavily on details that would not have come before the jury had Lieutenant Wolter not improperly divulged them. The judge also instructed the jury to consider whether the two incidents would tend to show that Jensen had a plan or scheme of instigating sexual contact with young girls. Absent details of the prior incident, the jury could not have inferred that such a plan or scheme existed. In this case, the inclusion of Lieutenant Wolter's testimony could have tipped the scale for one juror and thereby injuriously or substantially impacted the final verdict. Under these circumstances, we cannot be certain that the error had "no or small effect" on the jury's verdict and should have "grave doubt" that the error was harmless. Thus, under *O'Neal*, we treat the error as harmful and grant Jensen's petition for habeas relief. Therefore, we **AFFIRM.**