NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0202n.06

Nos. 09-1354, 09-1609

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 01, 2011**
LEONARD GREEN, Clerk

THOMAS C. DITTRICH,                          )
                                             )
    Petitioner-Appellee Cross-Appellant,     )
                                             )   ON APPEAL FROM THE UNITED
v.                                           )   STATES DISTRICT COURT FOR THE
                                             )   EASTERN DISTRICT OF MICHIGAN
JEFFREY WOODS,                               )
                                             )
    Respondent-Appellant Cross-Appellee.     )

Before:  SUHRHEINRICH, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge.  Thomas Dittrich petitioned for a writ of habeas corpus, challenging his state-court conviction for criminal sexual conduct on two grounds:  ineffective assistance of counsel and violation of his Sixth Amendment right of confrontation.  The district court conditionally granted the writ based upon the first claim but rejected the second.  Both parties now appeal.  We reverse the district court's grant of habeas.

I.

The charges against Dittrich arose from an alleged three-month relationship with his daughter's thirteen-year-old classmate ("Complainant") during the fall of 2002.  According to Complainant, after befriending Dittrich's daughter at school, she spent a lot of time at Dittrich's home and frequently slept over.  One night while she was lying on the living room couch, Dittrich

approached her and kissed her. The next day, Dittrich took Complainant to his bedroom and performed oral sex on her, which he did several times during the next few months. The two also had intercourse six or seven times over this period. On all but one instance, Complainant's sexual encounters with Dittrich occurred in his home. Though no third parties ever witnessed Dittrich's intimacy with Complainant, she wrote notes about Dittrich to two of her classmates; the prosecution introduced these notes into evidence. Additionally, Complainant confessed her feelings for Dittrich to her older sister, who in turn told their parents. Complainant's parents intervened, ending her affair with Dittrich.

Dittrich's wife and daughters corroborated many of Complainant's accusations. According to them, Dittrich's conduct with Complainant was "immediately suspicious." *People v. Dittrich*, No. 255536, 2005 WL 2895738, at *1 (Mich. Ct. App. Nov. 3, 2005) (per curiam). Dittrich sometimes disappeared with Complainant for prolonged periods. They once found him cuddling with her on the couch. Together the two drank alcohol, looked at pornography, and drew lewd pictures. Dittrich's wife claimed that when she confronted him about his relationship with Complainant, he eventually admitted it. She also confirmed Complainant's description of a unique mark on Dittrich's penis and stated that some of her sex toys—which matched the description of items Complainant reported receiving from Dittrich—had vanished. Finally, Dittrich's family members recounted several anecdotes about his history of physically abusing them.

In addition to Dittrich's family, various unaffiliated parties offered suggestive, circumstantial testimony regarding Dittrich and Complainant. For example, the two classmates to whom Complainant disclosed her relationship testified that Dittrich threatened to kill them if they ever repeated what they had heard. The secretary at Complainant's school stated that Dittrich once phoned Complainant there, and that the two carried on a secretive, fifteen-minute conversation, despite the secretary's requests that Complainant hang up.

Some dispute also surfaced during trial over the Complainant's past sexual conduct. The parties stipulated that in December 2002, Complainant went to the hospital, told a doctor about her relationship with Dittrich, and received a pelvic examination. Dr. Sabbath, the examining gynecologist, testified that Complainant's hymen was ruptured, consistent with sexual intercourse or the insertion of items, such as a tampon or multiple fingers, into the vagina. She also testified that such tears could occur naturally. Dittrich then moved to recall Complainant and examine her about her sexual history; counsel stated that it received "information" that Complainant was once sexually involved with a classmate, and that this contact could be the source of Complainant's hymenal tears. Prior to granting an in camera hearing, the court, relying on Michigan's rape shield law, required that Dittrich make an offer of proof as to the proposed evidence.[1] Because Dittrich could make no such

---

[1]Michigan's rape shield statute, Mich. Comp. Laws § 750.520j, generally prohibits a defendant's admission of evidence about a complainant's past sexual conduct with others. Yet "once the prosecution introduce[s] medical evidence to establish penetration, evidence of alternative sources of penetration bec[omes] highly relevant to material issues in dispute." *People v. Haley*, 395 N.W.2d 60, 62 (Mich. Ct. App. 1986). In such instances, the trial court may hold an in camera hearing to determine whether to admit evidence of a complainant's prior sexual conduct. *People v.*

showing, the court denied the motion but offered to reconsider the issue if Dittrich later produced any proof.

At the close of trial, the jury returned a guilty verdict on seven counts of criminal sexual conduct. The court sentenced Dittrich to 95–180 months' imprisonment.

Following his conviction, Dittrich filed a direct appeal, asserting three grounds for relief: (1) defense counsel, by failing to object to Dittrich's family's testimony about his history of domestic violence, provided ineffective assistance; (2) the court, by denying Dittrich's motion to examine Complainant about her sexual history, violated his right to confront his accuser; and (3) the court improperly admitted Complainant's prior consistent statements. The Michigan Court of Appeals affirmed the conviction, ruling that (1) though defense counsel's failure to object to the "prior bad acts" testimony was not sound trial strategy, abundant supplemental evidence made the error harmless; (2) Dittrich provided inadequate proof about Complainant's past sexual activities to surmount Michigan's rape shield law; and (3) the trial court properly admitted Complainant's prior consistent statements because they rebutted Dittrich's suggestions that she recently fabricated part of her story. *Dittrich*, 2005 WL 2895738, at *2–4. Dittrich then applied to the Michigan Supreme Court for leave to appeal, raising the same three claims, but the court denied relief. *People v. Dittrich*, 712 N.W.2d 477 (Mich. 2006).

---

*Hackett*, 365 N.W.2d 120, 125 (Mich. 1984). But before the court orders an in camera hearing, "[t]he defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted." *Id.*

In July 2007, Dittrich petitioned for a writ of habeas corpus, alleging both ineffective assistance of counsel and a violation of his confrontation right. The district court granted the writ. It held that although any purported error in the state court's application of the Michigan rape shield law was harmless, Dittrich received ineffective assistance of counsel. *Dittrich v. Woods*, 602 F. Supp. 2d 802, 806–09 (E.D. Mich. 2009). Following the district court's decision, the state now appeals the court's habeas grant; Dittrich cross-appeals its denial of his second claim.

II.

"In reviewing a district court's decision to grant or deny habeas relief, this Court reviews questions of fact under a 'clearly erroneous' standard and questions of law *de novo*." *Johnson v. Sherry*, 586 F.3d 439, 443 (6th Cir. 2009) (citation omitted). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may grant habeas relief if the state court's adjudication of the claim resulted in a decision contrary to, or unreasonably applying, clearly established federal law, as determined by the Supreme Court.[2] 28 U.S.C. § 2254(d). Yet AEDPA's "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks and citation omitted). "[A]

---

[2]A state-court adjudication is contrary to clearly established federal law if the court arrives at a conclusion opposite to that of the Supreme Court on a question of law or decides a case differently on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court unreasonably applies Supreme Court precedent if the court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." *Price v. Vincent*, 538 U.S. 634, 641 (2003) (alterations in original) (internal quotation marks and citation omitted). "Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." *Woodford*, 537 U.S. at 25.

A.

Dittrich first alleges that his trial counsel provided ineffective assistance for failing to object to his family's testimony about his history of domestic violence. To prove ineffective assistance of counsel, a petitioner must demonstrate, considering all of the circumstances, "that counsel's performance was deficient," and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[3]

Neither party contests the Michigan Court of Appeals's ruling that Dittrich's counsel's failure to object to the domestic-violence evidence was deficient. *See Dittrich*, 2005 WL 2895738, at *3

---

[3]As a preliminary matter, Dittrich argues that in deciding his ineffective-assistance claim, the Michigan appellate court "failed to apply the correct legal standard," and that its determination is thus "not entitled to AEDPA deference." Alternatively, he states, the court's "error . . . may also be se[e]n as being 'contrary to' governing Supreme Court precedent, as exemplified by *Strickland*." He cites no authority to support his position, which, in any event, the court's opinion belies. Although the court began its analysis by stating that, "[a]s [Dittrich] failed to raise this issue in the trial court . . . , our review is limited to plain error," it immediately proceeded to recite and apply the familiar *Strickland* test. *Dittrich*, 2005 WL 2895738, at *2. Contrary to Dittrich's allegation, the court did not apply the incorrect legal standard, and its decision merits AEDPA deference.

("Given the tendency of the jury to give excessive weight to such improper character evidence, we cannot presume that this [failure to object] was sound trial strategy."). We therefore review only the court's determination that the deficient performance did not prejudice Dittrich's defense. Counsel's deficient performance prejudices a defendant when there is "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696.

In holding that Dittrich's counsel's error did not prejudice Dittrich's defense, the Michigan Court of Appeals neither contradicted nor unreasonably applied *Strickland*. As the government presses, the evidence against Dittrich is overwhelming. Although Complainant was the only witness to the alleged sexual assaults, numerous other parties—including Dittrich's wife and daughters, Complainant's classmates, the school secretary, and the doctor who examined Complainant—corroborated her testimony. In his brief, Dittrich attempts to weaken the prosecution's case by attacking each piece of evidence individually. In this instance, however, the whole is greater than its parts; taken together, the evidentiary record is particularly inculpating. And, as the government points out, the central factor—the Complainant's credibility—is not "negated by the evidence of domestic violence."[4] Even though Dittrich raises valid concerns about the evidence

---

[4]To put the prejudice question into perspective, *Schoenberger v. Russell*, 290 F.3d 831 (6th Cir. 2002), proves helpful. In *Schoenberger*, an Ohio jury convicted the defendant of sexually assaulting his two teenage stepdaughters despite an absence of eyewitnesses or physical evidence. Instead, the case centered on the testimony of the defendant's stepdaughters. At trial, defense

against him, he fails to demonstrate that it was *objectively unreasonable* for the state court to

conclude that a jury would have convicted him without the illicit testimony.

B.

As alternate grounds for habeas relief, Dittrich claims that the trial court violated his Sixth

Amendment right of confrontation. We review a habeas petitioner's claim of Confrontation Clause

violations for harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The correct

inquiry "is whether the error 'had substantial and injurious effect or influence in determining the

jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United

States*, 328 U.S. 750, 776 (1946)). An evidentiary exclusion that "rendered [a] petitioner's trial so

---

counsel allowed the defendant's wife to testify about his history of domestic violence; the defendant
used this issue to wage an ineffective-assistance challenge on appeal. As in the instant case, the state
appellate court held that although the domestic-violence testimony was impermissible, it did not
prejudice the defendant. In this court's review of the defendant's eventual habeas petition, we too
denied the claim:

> Given the stringent standards of AEDPA and our general reluctance to second-guess
> state[-]court evidentiary rulings in a habeas proceeding, we cannot say that the
> admission of this evidence violated petitioner's due process rights. We agree with
> the state court's determination that no prejudice appears to have resulted from [the
> defendant's wife's] testimony, and that any prejudice which may have resulted from
> the evidence of petitioner's assault on his wife was minimal in light of the fact that
> the primary issue at trial was the victim's credibility.

*Id*. at 836. The panel's logic applies equally in Dittrich's case. To the extent that *Schoenberger* may
serve as a measuring stick, it supports the government's position since (1) Dittrich's case also
depended upon the credibility of the victim, and (2) the evidence against Dittrich was more extensive
than that against Schoenberger, suggesting that the domestic-violence testimony had even less
prejudicial potential.

fundamentally unfair as to constitute a denial of federal constitutional rights" may warrant habeas relief. *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (internal quotation marks and citation omitted). Conversely, a court's exclusion of evidence with limited exculpatory value is generally harmless. *See, e.g.*, *United States v. Rayborn*, 491 F.3d 513, 518 (6th Cir. 2007).

According to Dittrich, the trial court, in denying his motion to examine Complainant about her sexual history, prevented him from refuting Dr. Sabbath's testimony.[5] Yet Dr. Sabbath's statements inculpated Dittrich only minimally, if at all. As she explained, Complainant's hymenal rupture accorded with sexual intercourse *or* the insertion of other items into the vagina. Additionally, she noted, hymenal tearing may occur naturally. Her testimony thus did not directly incriminate Dittrich, but merely suggested that sexual contact with Dittrich was one of *many* possible explanations for Complainant's hymenal tears. In light of Dr. Sabbath's relatively neutral comments, the exculpatory potential of Dittrich's inquiries into the Complainant's sexual history would have

---

[5]Dittrich also argues that the trial court's use of the rape shield law prevented him from adequately testing Complainant's credibility. This argument lacks merit:

> No matter how central an accuser's credibility is to a case—indeed, her credibility will almost always be the cornerstone of a rape or sexual assault case, even if there is physical evidence—the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct. . . . [T]he Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser.

*Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000).

been equally slight. The court's decision to exclude the evidence thus did not have a "substantial and injurious effect" on the jury's verdict. *See Brecht*, 507 U.S. at 637.

III.

We therefore reverse the district court's grant of habeas relief on Dittrich's ineffective-assistance claim and affirm its rejection of his right-to-confrontation claim.