**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 12a0259n.06

Nos. 10-1041/10-1104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 07, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| RONALD CLARENCE BABCOCK | ) |
| | ) |
| Petitioner-Appellee/Cross-Appellant | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE EASTERN DISTRICT OF |
| LINDA M. METRISH | ) MICHIGAN |
| | ) |
| Respondent-Appellant/Cross-Appellee | ) |
| | ) |

Before: GIBBONS and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

ADAMS, J. Appellant, Linda Metrish, appeals the district court's grant of Appellee, Ronald Babcock's, writ of habeas corpus. In her appeal, Metrish asserts that the district court erred when it concluded that the admission of Trooper Hare's testimony in violation of Babcock's Sixth Amendment right to confrontation was not harmless error. Babcock filed a cross-appeal, essentially asserting violations of the Uniform Commercial Code. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. Background

On December 8, 2004, Babcock was found guilty by a jury of possession of a firearm by a felon, in violation of Mich. Comp. Laws § 750.224f and possession of a firearm during the

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

commission of a felony, in violation of Mich. Comp. Laws § 750.227b.  Babcock was sentenced to

46 months to 360 months of imprisonment.

The Michigan Court of Appeals summarized the facts in this case as follows:

> Defendant is a convicted felon. He was ineligible to possess a firearm at all times relevant to this case.  Defendant's former girlfriend, Shawn Lester, testified that while they were still dating, defendant selected a .22 rifle from Wal-Mart and gave her money with instructions to purchase it for him.  She purchased the gun and some ammunition and took it to her home, where defendant took the gun and demonstrated to her how to load it.  She insisted that defendant not remove the gun from her home because she knew he was a felon and ineligible to possess it, but he nevertheless took it and the ammunition out with him the next day.  Cindy Pero, the sister of one of defendant's friends testified that defendant took the gun to her house because he and his friend were going to shoot skeet with it.  Lester later retrieved the gun from Pero's house after reporting the matter to a police officer.  Lester took the gun to Stella Sherman, who placed it in her husband's gun safe.  Lester admitted that this was some time after she and defendant had broken up.  State Police Officer Hilary Hare retrieved the gun from Sherman's house and later interviewed defendant at jail.
>
> Subsequent to his arrest, but prior to trial, Hare informed the prosecutor that she would be unavailable to testify at trial because she would be on her honeymoon.  *See* MRE 804(b)(5)(A).  The prosecutor sought to adjourn the trial. In lieu of an adjournment, the trial court ordered that the officer's video deposition be taken.  Defendant objected, but was present at and cross-examined the officer during the deposition.  At the deposition, Hare testified, among other things, that defendant admitted to her at the jail interview that he had had Lester purchase a .22 rifle, which he later removed from Lester's residence and took to Pero's residence.  An edited transcript of the deposition was read before the jury, again over defendant's objection.  The videotape itself was not played for the jury, although the record is unclear whether some portion of it may have been played.

*People v. Babcock*, 2006 WL 2739328, at *1 (Mich. Ct. App. Sept. 26, 2006) (per curiam).

Babcock appealed his conviction to the Michigan Court of Appeals.  He argued that the

reading of Trooper Hare's testimony in lieu of live appearance at the trial violated his Sixth

Amendment right to confrontation.  The Michigan Court of Appeals agreed.  It further concluded,

however, that the error was harmless.  *Id.* at *3.  In reaching this conclusion, the Michigan Court

2

of Appeals conducted an examination of the record "to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *Id*. (internal citations and quotations omitted.) Specifically, the Court concluded that Trooper Hare's testimony was "sufficiently redundant that we do not believe defendant suffered any prejudice as a result." *Id*. Babcock filed leave to appeal this decision with the Michigan Supreme Court. In May of 2007, the Michigan Supreme Court denied Babcock's application for leave "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Babcock*, 730 N.W. 2d 474, 474 (Mich. 2007) (Markman, J., concurring).

In July of 2007, Babcock filed an application for a writ of habeas corpus with the United States District Court in the Eastern District of Michigan, Southern Division. The matter was referred to a Magistrate Judge. Relevant to the instant appeal, Babcock argued that his right to confrontation had been violated. Metrish responded. On October 28, 2009, the Magistrate Judge issued a report and recommendation ("R&R"), recommending that the district court grant Babcock's petition. The R&R concluded that the use of Trooper Hare's deposition testimony at trial violated Babcock's Sixth Amendment right to confrontation and that the error was not harmless. Metrish filed objections to the R&R and Babcock responded. On December 11, 2009, the district court overruled Metrish's objections, adopted the R&R, and conditionally granted Babcock's writ. The matter was stayed pending appeal.

Metrish appealed the district court's decision. Babcock filed a cross-appeal. The matter is now before this Court. Upon review, we AFFIRM the judgment of the district court.

## II. Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.

> "In reviewing a district court's decision to grant or deny habeas relief, this Court reviews questions of fact under a 'clearly erroneous' standard and questions of law de novo." *Johnson v. Sherry*, 586 F.3d 439, 443 (6th Cir. 2009) (citation omitted). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may grant habeas relief if the state court's adjudication of the claim resulted in a decision contrary to, or unreasonably applying, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Yet AEDPA's "highly deferential standard ... demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (internal quotation marks and citation omitted). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." *Price v. Vincent*, 538 U.S. 634, 641, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) (alterations in original) (internal quotation marks and citation omitted). "Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." *Woodford*, 537 U.S. at 25, 123 S. Ct. 357.

*Dittrich v. Woods*, 419 F.App'x. 573, 576 (6th Cir. 2011).

The particular issue on appeal is whether the admission of Trooper Hare's testimony in violation of Babcock's Sixth Amendment right to confrontation was harmless error. "We review a habeas petitioner's claim of Confrontation Clause violations for harmless error." *Id.* (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Accordingly, the appropriate inquiry "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The standard as set forth in *Brecht* does not require the petitioner to bear the burden of establishing whether the error was prejudicial. Rather, the United States Supreme Court has

explained that the district court judge should ask him or herself "'Do I, the judge, think that the error substantially influenced the jury's decision?'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "If the judge is certain that the error had no or a small effect, the verdict must stand. However, if the matter is so evenly balanced that the judge has 'grave doubts' as to whether the trial error had substantial or injurious effect or influence in determining the jury's verdict, such that the matter is so evenly balanced that he feels himself in a 'virtual equipoise' as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ." *Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009), quoting *O'Neal*, 513 U.S. at 435 & 445; *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006).

At oral argument, Metrish argued that the applicable standard of review would be to first do the AEDPA analysis and then, if successful, conduct the "harmless beyond a reasonable doubt" standard error analysis as stated in *Chapman v. California*, 386 U.S. 18 (1967). Metrish conceded that she did not assert this argument below. Accordingly, Metrish's assertion of a double layer standard of review has been forfeited. *See United States v. Tristan–Madrigal*, 601 F.3d 629, 636 n.2 (6th Cir. 2010); *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006) ("the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

### III.  Discussion

#### a.  *Metrish's Assignment of Error*

Metrish concedes that the introduction of Trooper Hare's testimony at trial violated Babcock's Sixth Amendment right to confrontation. As such, we limit our review to whether the district court erred in determining that there was more than a "grave doubt" as to whether the admission of Trooper Hare's testimony had a substantial and injurious effect on the jury's verdict.

5

In determining whether a Confrontation Clause violation is harmless under *Brecht*, this Court has repeatedly referred to the factors laid out in *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Those factors include: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.*

*Jensen,* 590 F.3d at 379.

Accordingly, we assess the prejudicial impact of the admission of Trooper Hare's testimony under *Brecht's* "substantial and injurious effect" standard by examining the error through application of the factors set forth in *Van Arsdall* to the facts in this case. *Jensen*, 590 F.3d at 379.

### i. The Importance of Trooper Hare's Testimony in the Prosecution's Case

The Court initially notes that at the outset of trial, the jury was informed the parties stipulated that Babcock was a felon and ineligible to possess a firearm on the date in question. Thus, the jury was left with the question of whether Babcock *actually possessed* the firearm. It is clear that Trooper Hare's testimony was very important to the prosecution's case. Although the prosecution presented the eyewitness testimony of Babcock's ex-girlfriend, Shawn Lester, her testimony became much more credible after the admission of Trooper Hare's testimony. Trooper Hare explained that Babcock confessed that he transported the firearm and that his fingerprints would be on the gun. The prosecution could have easily foreseen that Lester's credibility as Babcock's ex-girlfriend would be called into question, particularly in light of the fact that she reported Babcock to police seemingly simultaneously with the demise of their relationship.

The prosecution further presented the testimony of Cindy Pero. Pero explained that Babcock brought the gun to her home. Pero testified that she had been friends with Lester for at least seven

6

years.  She further explained that she and Lester had discussed the case the morning of trial.  She explained that she became reacquainted with Babcock about a year and a half prior to the trial.  She testified that she considered him an acquaintance rather than a friend.  Again, the prosecution could have reasonably foreseen a potential bias issue with Pero's testimony.

The prosecution presented the testimony of Stella Sherman.  She explained that Lester brought the gun to her at work and asked her to take it to her home so that Babcock could not locate it.  The next day, Sherman turned the gun over to Trooper Hare.  Finally, Sherman testified that her husband is Lester's cousin.  The prosecution could have reasonably foreseen a bias issue with Sherman's testimony.

The jury heard portions of Trooper Hare's video deposition.  Trooper Hare stated that on August 6, 2003, she interviewed Babcock at the County Jail about possibly possessing a firearm.  She verified that Babcock informed her that he had been living with Lester and that they had been in a relationship.  Babcock informed her that he looked at guns at Wal-Mart for Lester.  He explained that he wanted Lester to have protection.  Babcock confirmed Lester's version of the events; that he picked the gun out, gave her money and told her what to purchase.  Notably, Trooper Hare testified that she asked Babcock whether he handled the gun, and he indicated that his fingerprints would be on the rifle because he was showing Lester how to use it.  He further confirmed that he removed the gun from the home because Lester did not feel comfortable with it in her home.  After refreshing her memory with her police report, Trooper Hare testified that Babcock told her that "like a dummy I took it to Cindy Knowland's residence, or Cindy Knowland at Sue Churchill's residence in Akron."  Trooper Hare stated that Babcock told her that Cindy Knowland was Cindy Pero.  Trooper Hare

7

verified that she retrieved the gun from Stella Sherman's residence. She retrieved the ammunition from Lester.

On cross-examination, Trooper Hare stated that she did not personally observe Babcock with the gun. She explained that she interviewed Lester. Trooper Hare testified that Lester told her that she had fallen in love with Babcock and he moved into her home shortly thereafter. Lester stated that she made a big mistake on the date in question and that three days later she and Babcock broke up. Lester told Trooper Hare that either the day of or the day after she bought the gun, Babcock moved out of her home.

Accordingly, it is very clear that Trooper Hare's testimony was extremely important to the prosecution's case. It was necessary to overcome the perceived bias of *all* of the prosecution's witnesses. More importantly, it was the only method by which the prosecution could inform the jury of Babcock's confession that he had handled the gun and that he had transported the gun from Lester's home to Pero's home. The prosecutor highlighted the importance of this testimony on rebuttal during closing statements. The prosecutor explained that Trooper Hare testified as to Babcock's confession. Specifically, the prosecutor stated:

> There's your verification from the defendant himself. What better verification could you have? Sure we can go and send this to the lab to get prints off from it. Why? Take more people's time, more people's money, when you have the evidence that you need already before you? Evidence! The defendant's own statement. What would you rather have, what somebody told you happened? And especially when that person is the person who's on trial, the defendant, his own statements, his own statements to Trooper Hilary Hare.

ii. Cumulative Evidence

As explained above, the prosecution presented the live witness testimony of Lester, Pero, and Sherman. Lester and Pero both testified that they observed Babcock with a gun. Pero testified that

Babcock brought the gun to her house. Coupled with the stipulation that Babcock was ineligible to possess a firearm on the date in question, the Michigan Appeals Court noted, "[t]his evidence alone would be sufficient to conclude that the verdict was unaffected by Officer Hare's testimony, particularly given that she did not personally witness defendant in possession of the rifle." *Babcock*, 2006 WL 2739328, at *3 (Sept. 26, 2006).

That there was sufficient evidence for a conviction without Trooper Hare's testimony, however, does not prove an absence of prejudice. The evidence became overwhelming with the addition of Trooper Hare's testimony. As such, Trooper Hare's testimony *bolsters* the credibility of the other testimony as it corroborates much of the live eye-witness testimony.

Further, Trooper Hare testified to Babcock's confession. Admission of a confession is not merely cumulative of other testimony. "A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 111 (1991). While it is possible to believe the jury *could have* found Babcock guilty without the offending testimony, we have grave doubts as to whether the unconstitutional admission of his confession via Trooper Hare's testimony *did not* have a substantial effect on the jury's verdict. *O'Neal*, 513 U.S. at 436.

### iii. Corroborating or Conflicting Evidence

Defense counsel attempted to impeach Lester's testimony by highlighting inconsistencies with Trooper Hare's video deposition. These inconsistencies were very minor and do not take away from the fact that Trooper Hare's testimony regarding Babcock's confession was corroborated by Lester and Pero's testimony. However, the fact that Lester's testimony varied slightly from her previous statements is all the more proof of the importance of Trooper Hare's testimony. Without

9

it, the jury was left with the impression after Defense Counsel's cross-examination that Lester was not being entirely truthful. Read in conjunction with Trooper Hare's larger corroborative video deposition testimony, however, the inconsistencies, in Lester's testimony appear to be very minor and could be easily overlooked.

The jury submitted a question to the court that clearly indicated that they questioned the testimony presented. Specifically, the jury asked; "Did Mr. Babcock admit taking the gun from the house?" The court issued a written response that stated: "Answer, yes." The jury also asked for the legal definition of "possessed."[1] As the Magistrate Judge stated in his R&R, these questions when viewed together "strongly indicate[] that the jury relied particularly on Hare's testimony in reaching its verdict." The Magistrate Judge noted that the question was a "specific, targeted question-whether petitioner had confessed to possessing the guns-that was answered only by Hare's testimony." We agree with the Magistrate Judge's view of these questions. It becomes clear that in light of the varying testimony, the jury placed weight on Trooper Hare's statements. Although the Michigan Court of Appeals declined to infer from these notes that the jury found the live testimony to be unconvincing, this is not the standard this Court must apply. Rather, this Court must ask itself "Do I, the judge, think that the error substantially influenced the jury's decision?" *O'Neal*, 513 U.S. at 436. The answer is unequivocally "yes."

iv. Extent of Cross-Examination Otherwise Permitted

While Babcock was given the chance to cross examine Trooper Hare, this cross examination was not effective. It appears that the video deposition was taken prior to the trial court's ruling on

---

1 Although the transcript reflects that the Court and the parties argued over the best way to answer this question, the answer eventually given to the jury was not read into the record.

10

Babcock's motion to suppress his statements to Trooper Hare. Therefore, Babcock's counsel was forced to cross examine on the issue of admissibility and to focus energy and time on issues that were soon thereafter deemed unnecessary. Further, Babcock's counsel stated on the record that he believed he was "at a little bit of a disadvantage because we didn't know what the evidence was going—how the evidence was going to come out at the trial[.]" As such, it would have been very difficult for Babcock's counsel to have been adequately prepared to cross examine Trooper Hare as if she were testifying live before the jury at trial.

v. Strength of Prosecution's Case

Without Trooper Hare's testimony, the prosecution's case was substantial but not overwhelming. There was no physical evidence and the remaining witnesses were potentially biased. As the Michigan Court of Appeals noted, the jury could have found sufficient evidence to convict Babcock without Trooper Hare's testimony. But, Trooper Hare's testimony, in conjunction with the live witness testimony, created an even stronger case for the prosecution.

After a thorough analysis of the factors set forth in *Van Arsdall*, this Court concludes that Babcock suffered a substantial and injurious effect from the inappropriate admission of Trooper Hare's testimony.

**b. *Babcock's Cross Appeal***

Much of Babcock's cross appeal is nonsensical. However, the Court construes that Babcock has asserted several arguments under the Uniform Commercial Code (U.C.C.). He repeatedly insists that his case is governed by the U.C.C. This belief is incorrect. As explained above, the instant case is governed by the AEDPA. "As its title implies, the Uniform Commercial Code (UCC) governs *commercial* transactions. *See* Mich. Comp. Laws § 440.1102(2) (describing the purposes of

11

Michigan's UCC). It is not a source of substantive rights in a criminal action." *Thompson v. Scutt*, 2011 WL 2745934 (July 13, 2011, W.D. Mich). Accordingly, Babcock's arguments in his cross appeal are rejected.

## IV. Conclusion

The Court has reviewed both Metrish's and Babcock's arguments on appeal. Finding no merit in either, for the reasons described above, we AFFIRM the district court's grant of Babcock's petition.